UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE J.,<br><br>                 Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                 Defendant. | Case No. C19-304 MJP<br><br>**ORDER REVERSING THE COMMISSIONER'S DECISION AND REMANDING FOR FUTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting a treating provider's opinion and, in the alternative, the case must be remanded for consideration of new evidence. Dkt. 10. Because the ALJ erred by discounting the medical opinion at issue, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 55 years old, has a high school education, and has worked as a receptionist and a metal finisher. Dkt. 8, Admin. Record (AR) 31. Plaintiff applied for benefits in April 2015, alleging disability as of April 1, 2015. AR 312. Plaintiff's application was denied

initially and on reconsideration. AR 311, 325. After the ALJ conducted a hearing in September 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 267-310, 16-33.

## THE ALJ'S DECISION

Plaintiff's date last insured was June 30, 2017. AR 18. Using the five-step disability evaluation process set forth in 20 C.F.R. § 404.1520, the ALJ found that for the relevant period from the April 2015 alleged onset date through the June 2017 date last insured:

**Step one:** Plaintiff did not engage in substantial gainful activity.

**Step two:** Plaintiff had the following severe impairments: fibromyalgia, disorder of the gastrointestinal system, affective disorder, and anxiety disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity:** Plaintiff could perform light work, lifting 20 pounds occasionally and 10 pounds frequently. She could sit and stand/walk for six hours per day each. She could occasionally climb ramps/stairs, balance, stoop, bend, squat, kneel, and crouch, but never crawl or climb ladders, ropes, or scaffolds. She was limited to occasional exposure to pulmonary irritants. She needed to avoid concentrated exposure to hazards or heavy vibrations. She was able to perform the basic mental demands of competitive, unskilled work, including understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. She could have superficial and infrequent interactions with supervisors, coworkers, and the general public.

**Step four:** Plaintiff could not perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed, Plaintiff was not disabled.

AR 18-33. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-4.

Plaintiff filed a new application for Supplemental Security Income in February 2018, alleging onset in May 2015. AR 229. The Commissioner determined that she was restricted to sedentary work and, based on her age, education, and work history, the Medical-Vocational

Guidelines mandated a finding of disability. AR 241 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 201.14). The established onset date was her February 2018 application date. AR 241.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.    Medical Opinion**

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1502(a), (d), (e); 416.902(a), (i), (j). An ALJ may reject the opinion of a non-acceptable medical source, such as a therapist, by giving reasons germane to the

opinion. *Id.* An ALJ must consider all opinions, including those from non-acceptable medical sources, which may in some cases even outweigh the opinions of acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).

Plaintiff's treating therapist, Deborah Gaebler, ARNP, opined in March 2017 that Plaintiff was unable to reliably maintain punctual attendance, complete a normal workday and workweek without unreasonable interruptions from psychological symptoms, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently. AR 666-67. Ms. Gaebler also opined that more than 20% of the time Plaintiff would have noticeable difficulty with several other work-related functions, such as understanding and remembering very short, simple instructions. *Id.*

The ALJ gave Ms. Gaebler's opinions "little weight" for several reasons. AR 30. First, the ALJ discounted her opinions because she was "not an acceptable medical source who can provide medical opinions." AR 30. The ALJ's conclusion reflects a misunderstanding of the Commissioner's regulations. Ms. Gaebler is a medical source who can provide medical opinions. *See* 20 C.F.R. §§ 404.1502(d) ("Medical source means an individual who is licensed as a healthcare worker"), 404.1513(a)(2) ("A medical opinion is a statement from a medical source"). The fact that Ms. Gaebler was a non-acceptable medical source was not a germane reason to discount her opinions.

The ALJ also discounted Ms. Gaebler's opinions on the grounds that she relied heavily on Plaintiff's discounted self-reports while the medical evidence showed only "moderate symptoms" and improvement with medication, and because Plaintiff's activities of living independently, driving, and preparing simple meals were inconsistent with Ms. Gaebler's opinions. AR 30.

### 1. Medical Evidence

Conflict with the medical evidence of record can be a legitimate reason to discount a medical opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (affirming rejection of doctor's opinion that was contradicted by her own and other medical examiners' reports). Here, however, the ALJ did not analyze the medical evidence properly.

Ms. Gaebler began seeing Plaintiff in January 2017, and had treated her at three appointments when she gave her opinions in March 2017. AR 763-67. Ms. Gaebler reported that Plaintiff cried during every appointment, and had difficulty reading and understanding ordinary words such as "persistence." AR 668. At one appointment, objective mental status findings were normal. AR 765. At the other two appointments, Ms. Gaebler observed dirty and disheveled appearance, depressed mood, and tearful or anxious affect. AR 766-67, 763. Beginning September 2016, when Plaintiff acquired health insurance and was able to receive treatment, other treatment providers observed depressed mood, anxious and labile or blunt affect, tearful demeanor, and tangential speech. AR 719, 722, 725, 729, 744. The ALJ inaccurately summarized the medical evidence as showing that Plaintiff's "mental status examination was normal except for one visit when [Plaintiff] presented in an anxious mood." AR 28. In fact, there were numerous abnormal findings during numerous visits over the course of many months of treatment. Because the ALJ's analysis of the medical evidence was flawed, the ALJ failed to show that the medical evidence conflicted with Ms. Gaebler's opinions.

The Commissioner argues that Ms. Gaebler's opinion that Plaintiff could not plan independently conflicted with Ms. Gaebler's treatment notes that Plaintiff's thoughts were linear and goal directed, and she had intact judgment and insight. Dkt. 17 at 7 (citing AR 762, 763,

765).  Ms. Gaebler's notes included both normal and abnormal observations, and she used her professional training and judgment to synthesize clinical findings into a medical opinion that Plaintiff was unable to "set realistic goals or make plans independently of others."  AR 667.  The Commissioner, as a lay person, is not qualified to opine that linear, goal-directed thoughts and intact judgment and insight in conversation with her treatment provider contradict an inability to set realistic goals or plan independently in the workplace.  *See Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("However, as a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'") (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)); *see also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ, "who was not qualified as a medical expert, should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition.").

The Commissioner also argues that state agency doctors' opinions of lesser restrictions supplied an adequate reason to reject Ms. Gaebler's opinions.  Dkt. 17 at 7.  The ALJ's decision does not contain such an analysis and the Commissioner's contention is thus an improper *post hoc* argument upon which the Court cannot rely.  The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).

Conflict with the medical evidence was not a germane reason to discount Ms. Gaebler's opinions.

## 2. Self-Reports

"If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.* And an ALJ does not provide clear and convincing reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports the ultimate opinion with her own observations. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)).

Psychiatric evaluations "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient[,]" because "'[u]nlike a broken arm, a mind cannot be x-rayed.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Id.*

Ms. Gaebler performed mental status evaluations and clinical interviews. She reported numerous abnormal findings, consistent with other providers' observations. There is no indication that Plaintiff's self-reports altered Ms. Gaebler's opinions, or that Ms. Gaebler abdicated her professional responsibility to exercise independent judgment.

The Commissioner argues that Ms. Gaebler "relied heavily on Plaintiff's statements that since 2015, Plaintiff had only left the house 10 times for anything other than going to a doctor appointment." Dkt. 17 at 8 (citing AR 765). But Ms. Gaebler did not opine that Plaintiff could rarely leave her house, indicating she did not rely on this statement of Plaintiff's. The Commissioner also asserts that Plaintiff "reported to Ms. Gaebler that for the past 15 years she gets so overwhelmed that she cannot be in public," in contrast to evidence that she worked until 2015. *Id.* In fact, Plaintiff told Ms. Gaebler that she had "had this problem off & on for about 15 years," not consistently for the past 15 years. AR 765. Ms. Gaebler did not rely on the Commissioner's inaccurate rendering of Plaintiff's statement.

Reliance on Plaintiff's self-reports was not a germane reason to discount Ms. Gaebler's opinions.

### 3.     **Improvement with Medication**

Evidence that medical treatment helped a claimant "'return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders' … can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00H (2014)).

The ALJ cited treatment notes from two appointments. AR 28 (citing AR 723, 727, 729). In September 2016, Plaintiff told a treatment provider that her "[a]nxiety [was] controlled in the past with [E]lavil," and the provider accordingly prescribed Elavil. AR 723. In October 2016, Plaintiff reported that her "[a]nxiety [was] controlled with [E]lavil" and requested a refill. AR 727. However, objective findings still included anxious mood. AR 729. This is not substantial evidence to support a finding that Plaintiff returned to a level of function that enabled her to

work. The Commissioner does not defend the ALJ's reasoning, apparently conceding that it was erroneous.

Improvement with medication was not an adequate reason to discount Ms. Gaebler's opinions.

**4.   Activities**

Conflict with a claimant's activities "may justify rejecting a treating provider's opinion." *Ghanim*, 763 F.3d at 1162. The ALJ cited living independently, driving, and preparing simple meals. AR 30. Plaintiff reported that she heats up leftovers or makes sandwiches. AR 512. She testified that she used to cook but "do[es]n't really know how to" now. AR 284. Plaintiff reported doing laundry and light cleaning, but she needs someone to help her with household chores or finish what she started. AR 512. These extremely minimal activities do not contradict Ms. Gaebler's opinions.

The Commissioner argues that a trip Plaintiff took contradicted Ms. Gaebler's opinions that Plaintiff is unable to travel to unfamiliar places or plan independently. Dkt. 17 at 8 (citing AR 762). Plaintiff told her therapist that she "had to drive north to visit long term friends. [She f]ound the drive horrible, however it wasn't bad coming home." AR 762. That the friends are "long term" suggests that travel to their place is familiar, and a single "horrible" trip that Plaintiff "had to" take does not demonstrate a consistent ability to plan independently. Moreover, the ALJ's decision does not contain such an analysis and the Commissioner's contention is thus an improper *post hoc* argument upon which the Court cannot rely. *Bray*, 554 F.3d at 1225.

Activities were not a germane reason to discount Ms. Gaebler's opinions.

The ALJ erred by discounting Ms. Gaebler's opinions without providing a germane reason. The error is harmful because the ALJ did not include all of Ms. Gaebler's opined

limitations in the RFC, and thus may have relied at step five on jobs Plaintiff cannot perform. *See Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012). On remand, the ALJ must reevaluate the opinions.

**B.    Subsequent Disability Determination**

Plaintiff contends this case must be remanded because the ALJ's decision is irreconcilable with the Commissioner's later decision to award benefits beginning February 2018. Dkt. 18 at 8-9. Because the Court reverses the ALJ's decision based on erroneous rejection of Ms. Gaebler's opinions, the Court need not reach this issue. On remand, the ALJ will have the opportunity to consider consistency with the subsequent decision.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Ms. Gaebler's opinions, reassess the RFC as necessary, and proceed to step five as needed.

DATED this 10th day of December, 2019.

Marsha J. Pechman
United States District Judge

ORDER REVERSING THE
COMMISSIONER'S DECISION AND
REMANDING FOR FUTHER
ADMINISTRATIVE PROCEEDINGS - 10